Titus *v.* Hoagland.

HARMON H. TITUS et ux. et al., appellants,

*v.*

CHRISTOPHER S. HOAGLAND, executor of Jane V. Titus, deceased, respondent.

1. A son advanced money to his mother for her support during her life, under an agreement that he should be repaid at her death out of her estate. The son procured from his wife the money advanced, agreeing that she should have the account against his mother. Equity will enforce the claim in behalf of the wife.

2. The parol assignment to the wife being unknown to the mother, a counter-claim which she had against her son at her death will be set off against this claim of the wife.

3. Where application is made under section 20 of the act relative to the sale of land (*Rev. p. 1047*) for a sum sufficient to pay debts, the amount requisite for the purpose will, as a general rule, be paid to the personal representative, to be administered in the orphans court. There must be special circumstances to warrant the chancellor to take the settlement of the account out of the orphans court.

On appeal from part of a decree advised by Vice-Chancellor Van Fleet.

*Mr. John D. Bartine* and *Mr. Gilbert Collins*, for appellants.

*Mr. John R. Emery*, for respondent.

The opinion of the court was delivered by

VAN SYCKEL, J.

Christopher S. Hoagland, the complainant, and Harmon H. Titus, one of the defendants, are the executors of the last will and testament of Jane V. Titus, deceased. Since the death of said testatrix her real estate has been sold under a decree of the court of chancery, and the proceeds of such sale paid to the clerk of said court. Thereupon the said Harmon H. Titus as executor filed his petition in the court of chancery, setting up that the personal estate of the decedent was insufficient to pay her debts, and praying that out of the moneys arising from the sale of said lands a sum sufficient to satisfy such debts should be paid to him for that purpose.

The claim which is the foundation of the only controversy in this court, is one alleged to be due from the testatrix to Lydia D. Titus by parol assignment from her husband, the said Harmon.

The bill is filed by the co-executor, setting up that this claim made by the said Lydia is fraudulent, and praying that an account may be taken under the direction of the court of chancery; that the claims against the estate may be there ascertained and established, and the surplus, if any, distributed pursuant to the will in that jurisdiction. At the time of her death the testatrix owned a farm in Somerset county, containing sixty acres of land, on which she had lived for more than twenty-five years. Her family, during the greater portion of that period, consisted of herself, two sons, two daughters and two grandchildren. The debt in question was contracted between 1864 and the death of the testatrix (which occurred in 1877) for goods alleged to have been furnished and money loaned to her by her son, the said

Harmon H. Titus, out of his wife's private separate estate, under an agreement between said husband and wife that the said claim against the mother should belong to the wife.

Harmon H. Titus, in support of the claim, has produced checks for all the cash items except two, drawn by him to the order of his mother, and by her endorsed; also receipted bills for various items in the account, and pass-books kept during the entire time, containing the several items now claimed. · He testifies that the claim is in all respects a just one. Jane Van Middlesworth, his sister, whose interest is adverse to the allowance of this demand, testifies that she has known of the existence of this account for a long time, and that at various times she and her brothers had, at their mother's request, written to Harmon for money and goods, which were subsequently received in response to such letters. She further states that the testatrix, within three weeks of her death, in the presence of the several members of the family, said to Harmon that he had ruined himself to keep a roof over her head; that he should be paid if it took the last cent she had, and then proposed to give him a mortgage on her farm. In this testimony she is corroborated by her husband. Randolph Titus, a hostile witness, admits that various articles charged in the account were furnished by Harmon, and that he took some of the checks to the bank, and received the money for them for testatrix.

He also admits that at the conversation which occurred about three weeks before his mother's death, he told his mother she ought to settle with Harmon and secure his claim. He qualifies his testimony by saying that Harmon stated that his only claim was for the hovel and machine-house erected on the farm, but in this respect he is contradicted by Ridgeway Hoagland, whose interest also is adverse to that of the claimant.

Ridgeway says that he lived with testatrix; that goods frequently came there from his uncle Harmon; that he was present at the conversation referred to by Randolph Titus; that the testatrix asked Harmon if he had his bill, and he wanted to know why she asked for it; she said she wanted to give him a first mortgage on the farm; that Randolph said she should not give

him a first mortgage; that Harmon said it would take half the farm, and the testatrix replied, " Well, then I will live accordingly."

The evidence of the members of the family is very persuasive to show that the products of the farm were insufficient to support the testatrix and her large family, and that she was generously · assisted by her son Harmon to the extent claimed, under an agreement that he should be paid out of her estate at her death.

Nor do I find any reason to doubt the testimony of Harmon and his wife, Lydia, that the latter promised him, out of her own earnings, the sum of $2,250, which enabled him to provide for his mother, with the understanding that the wife was to have his claim against his mother at the death of the latter.

The recognition of the claim by the testatrix shortly before her death, and the fact that it was not to be enforced during her lifetime, makes it unnecessary to consider the question of limitation.

That part of the account which accrued prior to 1861, amounting to $167.61, passed to Harmon's assignee in bankruptcy, and must be excluded.    He had no power to transfer that portion of the claim to Lydia, to whom he was married in 1861.

There is also an admitted overcharge of $18.05 in the account, which must be corrected.    Lydia admits that the testatrix had no knowledge, in her lifetime, of the equitable assignment of this claim to her, and therefore any counter-claim which the testatrix had at her decease against Harmon is to be set off against it. The proofs disclose the fact that the testatrix was the guardian of Ridgeway Hoagland, and that the sum of $1,500 in her hands as such guardian was loaned by her in 1874 to Harmon H. Titus.    Although this loan was made from the trust fund, the testatrix, by her will executed with the consent of Harmon, provided for the payment of the sum due the ward, intending thereby, it must be presumed, to make the claim against Harmon due to her in her individual capacity.    It cannot be supposed that in her dealings with Harmon the testatrix expected to pay his entire claim against her without any allowance for this sum of $1,500 advanced to him.    It will be inequitable to permit the entire claim of Harmon, who is insolvent, to be recovered from

the estate of the decedent, leaving the sum advanced to him by the mother, and for which her estate is liable, wholly unpaid. This sum should be credited on the claim, and the balance allowed.

The decree below should be reversed, and the record remitted, that an account may be taken and a decree made in accordance with the views herein expressed.

As a general rule, where application is made, as in this case, under section 20 of the act relative to the sale of land (*Rev. p. 1047*), for a sufficient sum arising from the sale thereof to pay debts, the amount requisite for such purpose will be paid to the personal representative, to be administered under the direction of the orphans court. Such has been the practice under rule 154 of the court of chancery.

There must be special circumstances to warrant the chancellor to take the settlement of the account of executors or administrators out of the orphans court.

In *Salter* v. *Williamson, 1 Gr. Ch. 480,* the chancellor held that where there are no special reasons for going into equity, the orphans court is the proper tribunal for the settlement of such accounts.

Chancellor Williamson recognized the propriety of this rule in *Clarke* v. *Johnston, 2 Stock. 287,* and it has not since then been questioned. In the case before us the wife could not sue the husband at law for her claim, and therefore that full disposition may be made of the case, it is indispensable that the chancellor retain control of it for the purpose of final settlement and distribution.

This disposition of the case will enable the chancellor to permit Ridgeway Hoagland, if he is so advised, to make application for the appropriation of the $1,500 set off to the payment of the sum due said Ridgeway from his deceased guardian. It is manifest that the provision made in the will of the testatrix for satisfying the claim of her ward is wholly inadequate for the purpose. The will declares that she owes her ward $1,500, and, in discharge of such indebtedness, provides that he shall have so much of the share she would otherwise have given to Harmon H. Titus as

will be sufficient to pay it. Full and complete justice will be done by applying the $1,500 to the payment of this trust liability on terms that it shall operate as an equitable assignment of Ridgeway's share under the will to Lydia D. Titus.

The bill is not framed to permit this court to make such decree.

*Decree unanimously reversed.*